PAT HARRIS (SBN 214545)
Law Offices of Pat Harris APC
3940 Laurel Canyon Blvd., #955
Studio City, Ca. 91604
Telephone 213-810-9063
Email: pat@patharrislaw.com

Attorney for Defendant
YURI KHATCHIKYAN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>YURI KHACHIKYAN,<br><br>Defendants. | Case No. 2:24-cr-00214-MEMF<br><br>**DEFENDANT'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER FOR DETENTION**<br><br>Proposed Motion Date: May 17, 2024<br>Time: 2:00 p.m. |

    Defendant Yuri Khatchikyan, through his attorney, respectfully requests that the Honorable Magistrate Court Judge Patricia Donahue review and reverse the prior order of April 11, 2024, for the detention of defendant Yuri Khatchikyan.  Counsel, after checking with AUSA Josh Lee's schedule, has asked for a hearing on the Motion for May 17, 2024.  The Court Clerk has confirmed that the Court is available on that date at 2:00 P.M.

1

## I. INTRODUCTION

Defendant Yuri Khatchikyan was arraigned on April 11, 2024, on a three-count indictment charging his wife and him with Conspiracy to Commit Wire Fraud, Wire Fraud and Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity. The charges arise out of two SBA loans taken out in 2020 in the total amount of approximately $290,000 and one PPP loan in the amount of $20,000. Mr. Khatchikyan made his initial appearance before Magistrate Judge Donahue on April 11, 2024. The government requested detention for Khatchikyan based upon their argument that he was a flight risk and a danger to the community. Khatchikyan's attorney at the detention hearing was not privy to the information regarding Khatchikyan's criminal record or his current employment situation or his long history of working with the government. The defendant was under the incorrect belief that he had private counsel coming to the hearing and essentially did not tell the public defender the background regarding his prior criminal record or his current situation with a death threat hanging over his head. Based on the information available at that time, the Court denied his request for bond and ordered him detained.

Defendant Khatchikyan now comes before this Court asking for a review of the detention hearing based upon new information provided to the Court, letters of recommendation from several acquaintances, a history of his criminal record and concerns about his safety during his detention.

## II. KHATCHIKYAN HAS A LEGAL RIGHT TO A REVIEW

At his arraignment, the defendant was confused by conflicting stories he was getting. The public defender told him that he was representing him, but the defendant replied that he had a private attorney who would be there shortly. Thus, he did not have a real conversation with the public defender about his history. When his case was called, the private attorney was not there so the public defender did the best he could under the circumstances. But he did not have the information that existed at the time to put before the Court. Therefore, the defendant is asking for this hearing based upon the new information that can be shown to the Court.

The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. 18 U.S.C. Section 3142 (f)(2).

"(g) Factors To Be Considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

   (2) the weight of the evidence against the person;

   (3) the history and characteristics of the person, including—

 (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

 (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. Section 3142 (g).

  As demonstrated below, the factors to be considered weigh in favor of allowing the defendant out on bond.

### III. DEFENDANT'S DETENTION ORDER SHOULD BE REVOKED

Although defendant has led a colorful life, he is neither a flight risk nor a danger to the community. In fact, the opposite is true. The defendant has a wife, two children, a house, numerous relatives and a remarkably thriving new business. In short, he has every incentive to stay in the United States. Leaving the U.S. would not only destroy his business, but also put his family and himself at risk.

Similarly, he is not a danger to the community. As described in detail below, the defendant has been a target of the Mexican Mafia since 2006 when he was stabbed repeatedly and left for dead. He cooperated against the Mafia members who stabbed him and has been forced to live with a "green light" hit hanging over his

head. Since that time, there have been several attempts and threats on his life, including recently, and he has had weapons in the house to defend himself. He is currently in protective custody while in jail because of the threats.

      A.   <u>Khatchikyan Has Numerous Incentives Not To Flee</u>

At the detention hearing, the Court found that Mr. Khatchikyan was a flight risk, citing his lack of citizenship as a reason. But there are numerous reasons for him to stay in the U.S.

First, as to the lack of citizenship, Khatchikyan is a permanent resident. He arrived in the U.S. in September of 1994. He checks in once a year with ICE at their office and provides them all his current information. (See Exhibit # 1). His last appointment was August 10, 2023, and his next appointment is August 9, 2024. ICE knows exactly where he is and what he is doing. For various reasons, discussed below, they have chosen not to deport him.

Secondly, defendant's entire family is in the U.S. He has a wife of thirteen years and three children: Yuri, age 16, Emil, age 13 and Natalina, age 5. His mother is in Los Angeles, and he is responsible for taking care of her as well as his mother-in-law who is also in Los Angeles. His father passed away a few years ago, as did his father-in-law. The vast majority of his relatives, including his two brothers, are here as well as the friends and business relationships that he has built (some of which are attached in the letters of recommendation – Exhibit #3). His children are still in

school and have all their friends and activities. He would not leave them or take them away from the U.S.

Third, the last year has been an extraordinary one for the defendant from a business standpoint. Several years ago, he opened a trucking company with one truck and one driver. Since then, he has built the trucking business into a successful business that continues to thrive.

Then, in late 2022 and early 2023, defendant hit on an idea that has proven very lucrative. He learned that, while the trucking business can be very profitable, getting started is often difficult. There are several steps that have to be taken including getting a loan for a truck, filing all the proper corporate documents to start a company, learning how to get the business bonded and dealing with the ends and outs of building a customer base. Defendant then hit upon an idea – in addition to running his own business, he could help others get started in the business by working as a consultant. He went on social media and advertised that he could help people get started in the trucking business by helping them get through all the necessary paperwork and steps needed to get through the first year, which is the most difficult. He would help them with the bonding, the incorporating, the loans and the business recruiting. He charged a one-time consulting fee of $5000 for his services. The result was an outpouring far greater than he could have ever dreamed. In the first year, he has had over 700 customers, resulting in a gross income of $3.5 million dollars. (See Exhibit # 2 - 2023 income tax return). The business is 100%

legitimate, and he has even instructed his accountant to make sure all the taxes and paperwork to the government are filled out correctly, even erring on the side of caution if there is any potential discrepancy.

The defendant is not going to flee the country and give up such a lucrative business. His potential prison sentence in this case, which the government and counsel have begun negotiating, is not likely to be a large number of years given that the actual loss amount is approximately $300,000 and his sentencing guideline number will be a low to moderate level of incarceration.

One reason that the defendant is asking for bond is that he was not prepared for the arrest in this case and was caught off-guard. He was not able to prepare someone else to run the business or to contact clients before he went in. He is not only the face of the business, but he is the one who runs all facets of it. He recognizes that he will likely do prison time for these allegations, but he needs a few months to get the business organized, get someone in place to run it and talk to the clients who are calling and texting wondering if he has disappeared. This is a business that has helped not only the defendant but also hundreds of people get started in their own business. He is extremely proud of the people he has helped and feels like he has finally found his place in the world. It would be very difficult to watch all that work be ruined.

Fourth, defendant has been charged with three crimes prior to this indictment (all discussed below). In each situation, he has chosen to stay and face the music

rather than flee. This includes a charge in 2012 that he knew could carry 15 years or more. He did his time without complaint and has never attempted to leave.

Fifth, as described in more detail below, it would be difficult for the defendant to flee to any country other than Armenia, given his criminal record and the fact that he only speaks Armenian and English. If he were to flee to Armenia, it would almost certainly be a death sentence as he cannot protect himself there the way he can in the U.S. It would expose him in a way that he has not been exposed in years and would make it easy for the Mexican Mafia to have him killed. He does not want to go back to Armenia as he views it as too dangerous.

Sixth, since his arrival in the United States in 2002, Khatchikyan has never left the U.S. He does not have a passport and has never returned to Armenia or even gone on vacation outside the U.S. One of the factors often cited by the government to prove a flight risk is that the defendant has repeatedly traveled outside the country, oftentimes to their home country where they have relatives. Since Khatchikyan has never left the U.S. or traveled abroad, this should be a point in his favor.

Finally, the defendant has a love for this country that he has repeatedly expressed in various forms of social media. He is an unabashed patriot and strong believer in the freedoms that the U.S. represents. He loves this country and has no desire to ever live anywhere else. His love for country has been demonstrated repeatedly when he could have fled after being stabbed and threatened but instead maintains he will not be run out of his adopted homeland.

For all of the above reasons, defendant Khatchikyan is not a flight risk and will not flee. He will stay and face the charges and do whatever prison time the Court deems appropriate without complaint.

### B. *The Defendant is not a Danger to the Community – He is an Asset*

As was referred to at the beginning of the motion, the defendant has led a colorful and at times harrowing existence. To understand defendant's current position, it is necessary to review his history, both criminal and as a government witness.

In 2000, defendant was arrested for second-degree robbery. The circumstances of the robbery did not involve a gun. He was arrested for taking $40 from a person with the use of a weapon i.e. a knife. He was sentenced to 4 years in prison and given two strikes.

The DEA became involved with Khatchikyan in 2005 and began using the defendant as an informant. He provided them names and evidence against several people that resulted in arrests and convictions. The government does not dispute his involvement with the DEA and his cooperation.

After several arrests were made, including of members of the Mexican Mafia, it became clear to the community that defendant was acting as an informant. Word was put out on the street that he was a snitch and that he needed to be taken out. Shortly thereafter, he was attacked by two men who stabbed him several times and

left him for dead. He managed to survive that assault although it took several months to fully recuperate.

The Glendale police department pressured him to give up the names of the two men who had stabbed him so they could arrest them. At first, he was reluctant to give up the names as he was sure this would lead to even more retaliation, but the Detective was insistent, even threatening him with jail if he did not reveal the names. Khatchikyan was assured that the men arrested would plead and that he would never have to tesify against them. He reluctantly agreed and gave them the two names. The men were subsequently arrested for attempted murder.

Unfortunately, neither man took a plea deal and the case went to preliminary hearing (the defense believes this is the case although it may have been at trial). Khatchikyan was told he had to testify but again was reluctant because he knew the consequences. Nevertheless, after some subtle threatening, he agreed to testify and then did. He knew that this would increase the pressure on him as a target of the Mexican Mafia and later learned that he was number one on their list.

The government did realize the danger and arranged for him to move to Atlanta and try and start a new life. But the move to Atlanta did not go well for either the defendant or his family, and he made the decision to move back to Los Angeles. He also armed himself and moved into a secure location.

Within a year of moving back, he was attacked again, but this time he was armed with a knife. He stabbed his assailants and escaped. At least one of the

assailants was taken to the hospital and the case was investigated by the police. However, Khatchikyan refused to cooperate at this point. He told the officers that the reason he was in this position was that he had cooperated before, but he was never going to do it again. It was explained to him that if he did not cooperate, he would likely be charged. He told them he would do the prison time rather than put himself and his family at further risk.

Khatchikyan took a plea deal and spent the next 7-8 years in prison. Law enforcement was aware of his situation as an informant and the Mexican Mafia hit put on him, so they placed him in protective custody.

When he got out, he wanted to start a new life, but he still had the potential hit hanging over him. He moved to a location where he could not be found and started his trucking business. Once the business took off, he moved his family into a home where he has put in larger walls, iron gates, 35 video cameras and part-time security.

To underscore the ongoing threat, the defendant received a recent Instagram message from someone named Bozo who sent him a picture of Khatchikyan's house with the message that his days are numbered. In one of the pictures, his wife, daughter and dog are all visible. The Instagram message is saved on his phone that the police took during the search. If they bring the phone to Court, he can show the threatening Instagram message.

The third conviction on his criminal record is a fight he got into in 2020. The fight was with his childhood best friend over something he admits was very stupid.

There was no weapon involved, it was a fistfight, and it was over quickly. Khatchikyan pled to a felony Assault with a Deadly Weapon and served three months in jail.

The Court's concern is justifiably about the gun found in the bushes at his house (and perhaps to a lesser extent the guns found in a safe). The defense, for purposes of this bond motion, would argue that in the previous crimes discussed, a gun was neither used nor even present on his person. The guns were at his house for self-defense. His wife is trained in using guns (she has in fact applied to become an LAPD officer) and the guns in the safe were registered to her. Neither party was carrying guns – they had them present to defend themselves and their children in the very real possibility that someone broke into their house and attacked them.

Khatchikyan has never shown a propensity to use a gun or to carry one. As described above, he was attacked twice and did not have a gun on him either time. The guns found were at the house and were only being used for potential self-defense.

IV.   **THE ATTACHED LETTERS SHOW A DIFFERENT SIDE TO DEFENDANT**

The defense has attached several letters from family and friends to show the Court a very different picture of Mr. Khatchikyan. The defense will not go into detail regarding the letters as the Court can read them, but the defense would steer the Court to two very important points. Each of the letter's reference that he is

dedicated to his family – that they are what matter most to him.  He has had a roller-coaster life, but he has always put protecting his family and taking care of them first.

Secondly, a couple of the letters discuss the changes that he has made in the last few years.  Almost all the letters acknowledge his past, but they talk about his transformation in the last few years and how he has become a very productive citizen, helping a lot of people.  Of particular note is the letter from Police Officer Giovanni Pineda who talks about how Khatchikyan has helped him and numerous others change their lives around.  He has found his niche in life and that bodes very well for his future.

## V. CONCLUSION

Mr. Khatchikyan cannot claim to be a saint or to have led a virtuous life.  He spent much of his early life associating with drug dealers and thieves.  Ironically, when he did do the right thing, it backfired on him and has caused him to have to hide for the rest of his life.  He has spent years dodging attacks and threats and even did prison time rather than get further into trouble with his pursuers.

When he came out of prison the last time, he was determined to get his life in order and make enough money to protect his family.  In the past two years, he has succeeded beyond even his wildest dreams.  He not only has a business that is making money, but he is helping other people realize their financial goals as well.  For the first time, he feels like he is truly a positive member of the community.

Currently, he is in protective custody at a local jail. Although he is in protective custody, that is no guarantee that he can be protected. We recently saw Michael Torres, an alleged Mexican Mafia member, killed in prison by other members at a time where he was in administrative segregation and thought to be untouchable. (Exhibit #4 – Newspaper story on Torres).

Mr. Khatchikyan respectfully requests the Court grant whatever bond the Court sees fit along with whatever conditions are deemed necessary. He understands that he is likely facing prison time for the current charges, but he is asking the Court to let him out on bond for a few months. Based on the recent threats, and that they now know where he lives, he needs to formulate a new plan to protect his family, especially while he is in custody, and to make sure that above all else, they are safe.

In addition, he needs to organize his new business and get in contact with his clients so they can move forward. He needs to find someone to run the business while he is gone so that when he comes out, his family and he can continue the life that they have built in the last two years. This is a critical time for the new business and he needs a little time to make sure that everyone, including the clients, are taken care of while he is gone.

Counsel has spoken to AUSA Joshua Lee who has stated he opposes any release. He has also stated that he will not be filing an opposition brief.

Based upon the above factors, Defendant Khatchikyan believes he has shown that he is neither a flight risk nor a danger to the community. Therefore, he

respectfully asks this Court to grant him a release on bond with whatever conditions the Court deems necessary.

Dated: May 13, 2024                                                    *s/ Pat Harris*
                                                                       Pat Harris
                                                                       Attorney for Yuri Khatchikyan